UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HARRY F. BENNETT,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:07-cv-1005

HONORABLE PAUL L. MALONEY

---

# OPINION and ORDER

**Overruling the Plaintiff's Objections and Adopting the R&R;
Affirming the Commissioner's Denial of Disability Benefits
Entering Judgment in Favor of the Defendant;
Terminating and Closing the Case**

Pursuant to 28 U.S.C. § 636 and W.D. MICH. LCIVR 72.2(b), this matter was automatically referred to the Honorable Ellen S. Carmody, United States Magistrate Judge, who issued a Report and Recommendation ("R&R"). Plaintiff filed timely objections, and the court also finds that plaintiff's objection is sufficiently specific and articulated to trigger *de novo* review of the portions of the R&R to which he has objected.[1]

---

[1] "'Only those objections that are specific are entitled to a *de novo* review under the statute.'" *Westbrook v. O'Brien*, 2007 WL 3462337, *1 (W.D. Mich. Nov. 15, 2007) (Maloney, J.) (citing *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (no *de novo* review where the objections are frivolous, conclusory or too general because the burden is on the parties to "pinpoint those portions of the Magistrate's report that the district court must specifically consider")).

**The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's objections.** For the reasons explained by the R&R, the four severe impairments found by the ALJ – unspecified mental impairment, plantar fascitis, degenerative joint disease, and alcohol abuse – did not render him disabled from his amended alleged onset date (August 1, 2004) through his date last insured.[2] Specifically, substantial evidence and governing law supported the ALJ's determination that plaintiff did not satisfy the criteria for mental retardation under section 12.05 of the Listing of Mental Impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.

After a January 2005 consultative examination, David Cashbaugh, M.A., L.L.P. observed that plaintiff's mental examination was unremarkable, assigned a Global Assessment of Functioning

---

*See, e.g., Fairfield v. Wacha*, 2008 WL 584940, *2 (W.D. Mich. Feb. 28, 2008) (Maloney, J.) ("Fairfield's objection does not cite any case law or any Constitutional, statutory or regulatory provisions, and he does not attempt to *substantively* address any of the Magistrate Judge's legal reasoning or conclusions. [T]hese failings render Fairfield's purported objection the same as no objection at all.") (citing, *Wallace v. Adams*, 51 F.3d 274, 1995 WL 141385 (6th Cir. Mar. 24, 1995) (p.c.) and *Bates v. Chapleau*, 37 F.3d 1498, 1994 WL 532937 (6th Cir. Sept. 30, 1994) (p.c.));

*Foster v. Ameriquest Mortgage*, 2009 WL 646420, *2 (E.D. Mich. Mar. 11, 2009) (adopting R&R without review, noting, "Plaintiff does not list specific objections . . . . Instead, Plaintiff merely attempts to reassert his claims for relief. * * * 'Overly general objections do not satisfy the objection requirement.'") (quoting *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)).

[2] Plaintiff originally alleged a disability onset date of January 1, 1999, when he was 33 years old. At the administrative hearing in 2006, however, he abandoned that claim and alleged disability only from August 1, 2004, when he was 38 years old, perhaps because he admittedly worked as a security guard from 1998 to 2004, *see* Tr 316-17, though he alleged that his father worked part of his shift sometimes when he was unable to do so because of physical pain, *see* Tr 327. Because the plaintiff does not allege disability or seek benefits for the period prior to August 1, 2004, much of the medical evidence and opinion relating to the period prior to that date is of limited relevance and will not be discussed in depth. *See* R&R at 4-6 (recounting plaintiff's subjective complaints, visits to medical professionals, and medical opinions and treatment from 1999 through 2003).

("GAF") score of 56 – which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, DSM-IV at 34 – and diagnosed only general "psychological factors affecting general medical condition", Tr 245-47. A February 2005 examination by Mark Garner, Ph.D., diagnosed plaintiff with a personality disorder and psychological factors affecting the general medical condition. Garner found, however, that while plaintiff met the Part A criteria for two listed impairments (12.07 Somatoform Disorder) and 12.08 (Personality Disorder) in title 20 C.F.R.'s listing of impairments, he failed to satisfy the Part B criteria because he experienced only mild restrictions in daily-living activities, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation, Tr 253-264.

This is significant, because the Paragraph D criteria of Listing 12.05, the Mental Retardation Listing which plaintiff urges as a basis for disability, requires at least two "marked" limitations or at least one marked limitation and "repeated episodes of decompensation", *Jones v. Comm'r of Soc. Sec.*, 2009 WL 3498809, *9 (W.D. Mich. Oct. 26, 2009) (Paul L. Maloney, C.J.) (also quoting medical opinion). *Cf. also Walker v. Comm'r of Soc. Sec.*, 2009 WL 3152980, *4-5 (W.D. Mich. Sept. 24, 2009) (upholding determination that although the claimant had "borderline intellectual functioning", she did not meet or equal the Mental Retardation Listing 12.05 because, *inter alia*, she had never suffered an episode of decompensation). "As our Circuit has explained, 'Decompensation is the appearance or exacerbation of a mental disorder due to failure of defense mechanisms.'" *Bailey v. SSA*, 623 F. Supp.2d 889, 895 n.16 (W.D. Mich. 2009) (Maloney, C.J.) (quoting *Kornecky*, 167 F. App'x at 499 n.3) (quoting STEDMAN'S MED. DICTIONARY 462 (27th ed. 2000))); *see also Lee v. Astrue*, 2009 WL 693156, *12 n.24 (M.D. Tenn. Mar. 13, 2009) ("Decompensation is the 'failure of defense mechanisms resulting in progressive personality disintegration.'") (quoting DORLAND'S

ILLUS. MED. DICTIONARY 437 (27th ed. 1988)).[3]

Moreover, that same February 2005 examination led Garner to issue a Mental Residual Functional Capacity ("RFC") Assessment which rated plaintiff moderately limited in five of twenty standard categories and not significantly limited in fourteen categories, and failed to rate the last category, Tr 249-50. Garner himself opined that plaintiff retained the mental capacity to perform simple tasks on a sustained basis, within his physical limitations, Tr 251. Even if the ALJ thoroughly credit Garner's opinion, it would leave plaintiff able to perform some jobs in the national and regional economies.

Next, an August 2006 intelligence test yielded a verbal IQ of 71, a performance IQ of 74, and a full-scale IQ of 65, placing plaintiff in the cognitively impaired range of overall mental ability, Tr 282-284. The ALJ still reasonably concluded, however, based on this and the other evidence of

---

[3]

The regulations provide that episodes of decompensation are

"exacerbations or temporary increases in symptoms or signs accompanied by loss of adaptive functioning, as manifested by difficulties in . . . maintaining concentration, persistence or pace." 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.00(C)(4).

The Railroad Retirement Act regulations provide a useful exposition of how decompensation manifests itself in the work setting. In the workplace, decompensation manifests itself as 'a repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms . . . with an accompanying difficulty in maintaining . . . concentration, persistence or pace (i.e., deterioration which may include deterioration of adaptive behaviors). Stresses common to the work environment include decisions, attendance, schedules, completing tasks, interaction with supervisors, interactions with peers, etc.' 20 C.F.R., pt. 220, app. 1, § 12.00(C)(4)."

*Kornecky*, 167 F. App'x at 499 (paragraph break added).

record, that plaintiff can be gainfully employed in a job which is consistent with a moderate limitation in carrying out detailed instructions, maintaining attention and concentration for extended periods, working in coordination or proximity to others without getting distracted, interacting with the general public, and getting along with co-workers without exhibiting behavioral extremes, Tr 18, which jobs included his past work as a security guard, Tr 19. That determination was supported by substantial evidence, because the full-scale IQ score of 65 and the performance IQ score of 64 satisfied only Listing 12.05 Paragraph C, leaving plaintiff to additionally demonstrate satisfaction of the criterion in the Listing's introductory paragraph.

That, the ALJ reasonably concluded, he did not demonstrate. Namely, plaintiff had to demonstrate that he experienced deficiencies in adaptive functioning[4] prior to the age of 22, R&R at 13-14. Plaintiff asserted before the ALJ and the Magistrate Judge that he suffered physical trauma

---

[4]

Listing 12.05 does not define "adaptive functioning", *Whitmire v. Astrue*, – F. Supp.2d- --, 2011 WL 1113872, *3 n.4 (D.S.C. Mar. 28, 2011) (Joseph F. Anderson, Jr.), and the parties have not identified, nor the court located any Social Security Ruling defining or clarifying the term. The Social Security Administration has formally stated only that "'[t]he definition of [mental retardation] . . . in [the] listings is consistent with, if not identical to, the definitions of [mental retardation] used by the leading professional organizations.'" *Whitmire*, 2011 WL 1113872 at *3 n.4 (quoting Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01, at 20022 (Apr. 24, 2002)). "Given [that] the SSA declined to adopt any one of [these] specific definitions, . . . the introductory paragraph of Listing 12.05 can be met if the individual is found to have, *inter alia*, deficits in adaptive functioning as defines by any of the [leading] professional organizations.'" *Whitmire* 2011 WL 1113872 at *3 n.4 (quoting *Durden v. Astrue*, 586 F. Supp.2d 828, 834 (S.D. Tex. 2008)).

"'Adaptive functioning' includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *Fisher v. Comm'r of Soc. Sec.*, No. 09-1096, 2011 WL 926865, *4 n.3 (W.D. Mich. Feb. 28, 2011) (Joseph Scoville, U.S.M.J.) (quoting *West v. Comm'r*, 240 F. App'x 692, 698 (6th Cir. 2007)), *adopted w/o objection*, 2011 WL 901968 (W.D. Mich. Mar. 15, 2011) (Maloney, C.J.).

of some sort before age 22 which produced the low IQ, implying that he suffered the corresponding requisite deficiencies in adaptive functioning, but he does not corroborate this with competent medical evidence. *See* P's Objections at 3 ("In the third grade, plaintiff was assaulted and knocked to the pavement, suffering a concussion . . . .") (citing Tr 325-26).

More telling, plaintiff has not identified any medical or psychological records pre-age 22 suggesting the deficiencies in adaptive functioning – whether induced by the alleged childhood assault or otherwise – nor, as the Magistrate Judge noted (R&R at 14), has any treating, examining or consulting medical professional opined for the record that he is mentally retarded, or that his current condition is consistent with such earlier, lifelong adaptive deficiencies. *See , e.g., Cheatum v. Astrue*, 388 F. App'x 574 (8th Cir. 2010) (C.J. Riley, Gibson, Murphy) (claimant failed to demonstrate requisite deficits in adaptive functioning before age 22, notwithstanding school's recommendation for placement in "educable mentally retarded" classes, because recommendation was not shown to be have been made by qualified mental health professional, and because she had maintained employment in semi-skilled and unskilled jobs for years and could perform daily activities and light housework, and recent expert opinion diagnosed her with borderline intellectual functioning rather than retardation); *Tullius v. Astrue*, 2011 WL 839259 (S.D. Ohio Mar. 4, 2011) (James L. Graham, J.) (upholding ALJ's determination that claimant did not meet or equal Listing 12.05 criteria for mental retardation).

In fact, our Circuit has recently upheld the denial of a Listing 12.05 mental-retardation claim even where – unlike our plaintiff's case – a mental-health professional had recently diagnosed him as mildly mentally retarded. Like the plaintiff here, the claimant in that case presented no evidence that he was in special-education classes as a child, and no evidence that he had failed classes or been

"held back" until the ninth grade.[5] Notwithstanding the adult diagnosis and mildly mentally retarded, and notwithstanding the fact that the claimant had dropped out of high school in the ninth grade and achieved only a "modest" work history,[6] that was enough to permit the ALJ's determination that he did not carry his burden of proving deficiencies in adaptive functioning before age 22. *See Turner v. Comm'r of Soc. Sec.* 381 F. App'x 488, 491-92 (6th Cir. 2010) (Martin, Boggs, White). *Contrast Sorter v. Astrue*, 389 F. App'x 620, 621-22 (9th Cir. 2010) (W. Fletcher, M. Smith, Sr. J. Todd) (remanding to ALJ for determination whether claimant met Listing 12.05 because, *inter alia*, he showed that he was in special-education classes as a child).

Significantly, neither the plaintiff's appeal brief before the Magistrate Judge nor his current objections attaches or identifies any medical, school or other records which purport to prove deficiencies in pre-age-22 adaptive functioning. This substantially undermines his case that he is mentally retarded under Listing 12.05, thus weakening his broader claim that all his impairments

---

[5]
The ALJ noted a report filled out by SSA interviewer D. Meyers stating that the plaintiff completed the eleventh grade, Tr 324, but the plaintiff retorts that the form in question was unsigned, and that his father testified that the reference to eleventh grade is "utterly impossible", P's Objections at 3 n.1. Accordingly, for purposes of this opinion, the court has assumed *arguendo* that the plaintiff is being truthful when he alleges that he "flunked out of the ninth grade", P's Objections at 1 (citing Tr 243).

[6]
Plaintiff points to evidence that he held "seven jobs in 1989; five jobs in 1990; two jobs in 1991; was unemployed in 1992 and 1993; held six jobs in 1994; earned only $72 in 1995; held four jobs in 1996; and five jobs in 1997. Each job lasted between two to five months. This record bespeaks a person unable to hold a job." P's Objections at 10 n.2. Given that the plaintiff is claiming disability from August 1, *2004* onward, the court finds evidence regarding his unimpressive work history from *seven to fifteen years earlier* to be of little to no probative value. Moreover, the plaintiff has not actually shown that the spotty work history back in the period 1989-1997 was caused by disabling impairments rather than his attitude, work ethic or volitional conduct. The court intimates no position on that question, but the job evidence from 1989-1997 is of no avail to plaintiff on a claim for benefits covering a far later period.

combined render him disabled. *See Fisher v. Comm'r of Soc. Sec.*, No. 09-1096, 2011 WL 926865, *5 (W.D. Mich. Feb. 28, 2011) (Scoville, M.J.) ("The earliest medical records plaintiff filed . . . are dated more than a dozen years after plaintiff reached age twenty-two. * * * Plaintiff's failure to submit evidence generated before March 2, 1993 [his twenty-second birthday], undermines his argument that the ALJ committed error when he found that plaintiff did not meet or equal the requirements of Listing 12.05. * * * A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during the developmental period.") (record citations and case citations omitted), *adopted w/o objection*, 2011 WL 901968 (W.D. Mich. Mar. 15, 2011) (Maloney, C.J.).[7]

**Finally as to the plaintiff's mental impairment, while it was not inappropriate for the plaintiff to submit, and the ALJ to consider, GAF scores, the ALJ was not required to credit those scores in the face of arguably contrary evidence and medical opinion.** The Global Assessment of Functioning score is a clinician's assessment of the individual's overall level of functioning. *See Smith v. Astrue*, – F. Supp.2d –, – n.11, 2009 WL 1992538, *11 n.1 (W.D. Mich. July 7, 2009) (Maloney, C.J.) (citing American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994) ("DSM-IV")). It is a necessarily subjective assessment and is often determined by someone other than a medical doctor, as it was here, where the 56 GAF score was assigned by an MA / LLP (Cashbaugh) in January 2005. A GAF

---

[7]Contrary to the plaintiff's objections, *see* P's Objections at 9, the ALJ's decision did not rest on any erroneous notion that a claimant is strictly required to produce a pre-age-22 diagnosis of mental retardation, nor have the Magistrate Judge or this court labored under such a misapprehension.

score itself, therefore, is not a medical opinion. *See Nottingham v. SSA*, 2009 WL 230131, *9 (W.D. Mich. Jan. 29, 2009); *see also Pethers v. SSA*, 580 F. Supp.2d 572, 579 (W.D. Mich. 2008) (citing 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) (defining "medical opinions")). While the ALJ and the court generally defer to adequately-supported medical opinions expressed by a claimant's care providers, they are not required "to put stock" in a GAF score in the first place' because it does not constitute "raw medical data." *Kornecky v. SSA*, 167 F. App'x 496, 503 n.7, 511 (6th Cir. 2006) (Richard Allen Griffin, J.) (citing *Howard v. SSA*, 276 F.3d 235, 241 (6th Cir. 2002)). Significantly, the SSA has refused to endorse the use of the GAF scale for use in the Social Security and SSI disability programs, cautioning that the scale "does not have a direct correlation to the severity requirements in our mental disorder listings." *DeBoard v. SSA*, 211 F. App'x 411, 415 (6th Cir. 2006) (quoting REV. MED. CRITERIA FOR EVALUATING MENTAL DISORDERS AND TRAUMATIC BRAIN INJURY, 2000 WL 1173632, 65 FED. REG. 50476, 50764-65 (Aug. 21, 2000)). *See, e.g., Dailey v. SSA*, 2009 WL 2568280, *12 (W.D. Mich. Aug., 18, 2009) ("Plaintiff faults the ALJ for failing to accord significance to the . . . determination by a non-treating physician that plaintiff's then current GAF score was 50. * * * The medical record does not support Plaintiff's argument that his non-exertional impairments limit him to an extent beyond that recognized by the ALJ's RFC determination, which is supported by substantial evidence. The Court, therefore, discerns no error.") (citing *Kornecky*).

**As to the plaintiff's two severe physical impairments found by the ALJ, the plaintiff has not identified any error in the ALJ's assessment of the evidence or application of the governing law either.** For one thing, the plaintiff contends that the ALJ failed to follow the rule requiring

deference to a properly-supported opinion of a treating physician, but it is doubtful whether the physician in question even qualifies as a treating source in the first place. Plaintiff himself notes that before he saw Roger DeYoung, D.P.M., in July 2005, he "had last seen Dr. DeYoung in 2001", *see* P's Objections at 5-6, a gap of 3.5 to 4.5 years depending on when in 2001 he alleges he was examined by DeYoung. On top of that unusually long gap in the "treatment" by Dr. DeYoung, the plaintiff concedes that he has not placed any records of the alleged earlier visits to DeYoung in the record, *see* P's Objections at 6 ("the older records were not in evidence").

Even assuming that Dr. DeYoung was a treating source, the plaintiff's objections (at 11-13) do not persuasively undermine the conclusion that DeYoung's advice was too vague and conclusory to constitute a medical "opinion", per 20 C.F.R. § 404.1527(a)(2), which might be entitled to deference under the treating-source rule, *see* R&R at 17-18 (noting that DeYoung advised only against a "long period" of standing and walking, without specifying what constituted a long period) *and accord Bridgman v. Barnhart*, 92 F. App'x 370, 371 (8th Cir. 2004) (treating physician's "opinion" which is vague and conclusory is entitled to no greater weight than any other physician's opinion) (citing *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001)). *See, e.g., Whitney v. Astrue*, 2010 WL 3023162, *3-4 (W.D.N.Y. July 29, 2010) (characterizing as "vague" and therefore of limited probative value the physician Eales's statements that the claimant "would prudently avoid *excessive* bending and lifting . . . [and] areas with *high* noise levels") (emphasis added); *Tempesta v. Astrue*, 2009 WL 211362, *7 (E.D.N.Y. Jan. 28, 2009) (characterizing as "vague", and therefore of little value to the ALJ, physician Balinberg's statement that claimant had "*limited* ability to perform frequent bending, to lift, to carry, to push and to pull heavy loads", because "Dr. Balinberg did not specify how 'limited' Tempesta's abilities were (e.g., in terms of the weight he could lift or

the hours of exertion he was capable of during a workday"); *Nemirovsky v. Apfel*, 101 F. Supp.2d 120, 121-22 (E.D.N.Y. 2000) ("[T][he consulting physician . . . stated that plaintiff is limited to 'light or moderate' lifting. Such vague language cannot constitute the substantial evidence that is necessary . . . .").

**Next, the plaintiff objects to the ALJ's determination that his subjective complaints of pain and pain-related limitations were not entirely credible.** Specifically, the plaintiff urges this court to require the agency to credit plaintiff's testimony that he cannot lift more than ten pounds at any time, which the plaintiff helpfully notes would preclude even light work pursuant to 20 C.F.R. § 404.1567(b) and § 416.967(b) , se*e* P's Objections at 13. As the Magistrate noted (R&R at 19), an ALJ's credibility assessment is entitled to great judicial deference, *see also Sims v. Comm'r of Soc. Sec.*, No. 09-5773, – F. App'x –, –, 2011 WL 180789, *4 (6th Cir. Jan. 19, 2011) (C.J. Batchelder, Sutton, McKeague) (citing *Warner*, 375 F.3d at 492, for the proposition that the ALJ's credibility assessment benefits from his opportunity to observe the claimant's demeanor). Plaintiff presents no evidence, or no more-persuasive or more-cogent interpretation of the evidence, which precluded the ALJ's finding that the claim of inability to lift ten pounds was inconsistent with the plaintiff's reported activities and the objective medical evidence. *Cf. Hash v. Comm'r of Soc. Sec.* 301 F. App'x 981, 989 (6th Cir. 2010) (Merritt, Cole, Sutton) (affirming denial of disability benefits to plaintiff suffering from degenerative disc disease and depressive mood disorder, and upholding ALJ's finding that claimant's subjective complaints were inconsistent with the evidence, including objective diagnostic tests, such as MRIs and CT scans, Dr. Vergis's clinical findings, statements in Dr. Koford's treatment notes, the opinions of state age medical and psychological consultants . . .

and Hash's own statements about his daily activities.").

**Out of an abundance of caution, the court will address an issue not much discussed by the ALJ and not addressed by the R&R: the potential legal significance of plaintiff's fourth impairment, a history of alcohol abuse.** This impairment cannot provide any basis for disturbing the ALJ's rejection of the plaintiff's disability claim, either with the original onset date of January 1, 1999 or with the amended onset date of August 1, 2004. This is so because since January 1, 1997, federal statute has effectively required the SSA to determine disability without considering the effects of substance abuse and addiction, and the statute draws no distinction between alcohol and other drugs, nor between legal and illegal drugs. *See Edwards v. Comm'r of Soc. Sec.*, 654 F. Supp.2d 692, 699 (W.D. Mich. 2009) (Maloney, C.J.) (citing The Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847 (1996)); *see* 42 U.S.C. § 1382c(a)(3)(J).

Indeed, if the plaintiff convinced the ALJ or the court that his alcohol consumption or abuse were contributing to his physical and/or mental impairments enough to be material, he would automatically be denied benefits. "[T]he social security administration must deny a claim for benefits if drug addiction or alcohol is a contributing factor material [to] a finding of disability." *Siemon v. SSA*, 72 F. App'x 421, 422 (6th Cir. 2003) (p.c.) (Keith, Cole, Cook) (citing 42 U.S.C. §§ 423(d)(2)(C) and 20 C.F.R. § 404.1535). *See, e.g., Siemon* 72 F. App'x 421 (affirming ALJ's determination that claimant was not rendered disabled by his chronic hepatitis B, dysthymia, anxiety, personality disorder, and history of alcohol dependency); *Ellison v. SSA*, 101 F. App'x 994, 995 (6th Cir. 2005) (p.c.) (Siler, Cole, Rogers) (affirming ALJ's determination that under new statutory

standard, claimant's severe impairments of degenerative disc disease, dysthymia, and alcoholic neuropathy left him able to perform a significant range of light work); *Hopkins v. SSA*, 96 F. App'x 393, 395 (6th Cir. 2004) (p.c.) (Kennedy, Martin, Rogers) ("Because Hopkins' original award of benefits was based on his drug addiction and alcoholism, the Commissioner was required by law to terminate Hopkins' benefits. The law requires that the Commissioner make a new medical determination on whether Hopkins was disabled without considering his drug addiction and alcoholism.") (citing 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(J)). *Accord Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010) (holding that substantial evidence supported ALJ's finding that claimant's "long history of marijuana abuse" materially contributed to his disabling impairments, namely depressive disorder and schizophrenia, and thus the ALJ properly denied disability benefits).

More detrimental to the plaintiff's claim, even if the plaintiff were right that the record compels the conclusion that he is disabled by the combination of his severe impairments – which include two physical impairments, the mental impairment, and the alcohol abuse – "[t]he burden of proving that drug addiction or alcohol abuse is *not* a contributing factor material to a disability determination is on the plaintiff." *Boone v. Astrue*, - F. Supp.3d –, –, 2011 WL 1042576, *5 (W.D. Ark. Mar. 22, 2011) (citing *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)) (emphasis added). *See also Kluesner*, 607 F.3d at 537 ("If the ALJ finds a disability and evidence of substance abuse, the next step is to determine whether those disabilities would exist in the absence of the substance abuse.") (citing *Brueggeman v. Barnhart*, 348 F.3d 689, 694-95 (8th Cir. 2003)).

**Finally, the plaintiff objects that he carried his burden at step five of the five-step disability analysis**, *see* P's Objections at 16-18. But the court need not address this objection.

Because substantial evidence supported the ALJ's determination that the Commissioner prevailed conclusively at step four of the analysis, there was and is no need to proceed to step five.

**ORDER**

Accordingly, having reviewed the complaint, the R&R, the plaintiff's timely objections to the R&R, and the defendant's timely response to the objections:

The plaintiff's objections [document # 13] are **OVERRULED**.

The R&R [document # 12] is **ADOPTED**.

The complaint is **DISMISSED**.

The Commissioner's adherence to the ALJ's February 12, 2007 denial of plaintiff's application for Social Security disability benefits is **AFFIRMED**.

Judgment will be entered by separate contemporaneous document, per FED. R. CIV. P. 58.

This case is **TERMINATED** and **CLOSED**.

This is a final and appealable order.

**IT IS SO ORDERED this 31st day of March 2011.**

    /s/ Paul L. Maloney
Paul L. Maloney
Chief United States District Judge